IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SNYDER LODGING GROUP, LLC d/b/a/ HAMPTON INN SNYDER, § § § | | |
| Plaintiff, § § | | |
| v. § | No. 5:23-CV-193-H-BQ | |
| § § | | |
| ACUITY, A MUTUAL INSURANCE COMPANY, § § § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Snyder Lodging Group, LLC d/b/a Hampton Inn Snyder (Snyder) filed a claim with its commercial insurance carrier, Defendant Acuity, A Mutual Insurance Company (Acuity), concerning alleged storm damage to Snyder's property. Pl.'s Original Pet. 2, ECF No. 1-6.[2] Acuity issued payment around July 28, 2021, but Snyder's representative, Pinnacle Limited (Pinnacle), hired to inspect the property and present the claim, "determined that the amount paid . . . was insufficient to repair the [p]roperty" to its former condition. *Id.* at 2–3. Snyder eventually filed suit against Acuity, asserting claims for breach of contract and breach of duty of good faith and fair dealing, as well as violations of the Texas Insurance Code, Prompt Payment of Claims Act, and Texas Deceptive Trade Practices Act, and seeking damages and attorney's fees. *Id.* at 4–8.

Acuity now "seeks abatement of the litigation pending the appraisal award because it will narrow or eliminate the need for litigation and promote judicial economy." Def.'s Mot. 1, ECF

---

[1] The Honorable James Wesley Hendrix, United States District Judge, referred this case to the undersigned for pretrial management. ECF No. 7.

[2] Page citations to the parties' exhibits refer to the electronic page number assigned by the Court's electronic filing system.

No. 5. Snyder opposes Acuity's request, arguing that the dispute concerns the policy's *coverage*—not the amount of loss—and extra-contractual claims are not subject to the appraisal process; therefore, abatement is inappropriate. Pl.'s Resp. 1–2, ECF No. 6.

Because appraisal will not resolve all disputed issues, the Court **DENIES** Acuity's Motion to Abate and will enter a separate order setting forth scheduling deadlines that accommodate the appraisal process.

## I. Background

### A. Origin of the Dispute

Snyder alleges that on May 16, 2021, its property located at 1801 E. Roby Hwy., Snyder, Texas (Property) suffered substantial damage from a storm. Pl.'s Original Pet. 2. The Property was insured by Acuity on the date of the purported damage. *Id.*; Def.'s Mot. 2. Snyder submitted a claim for the damage, and Acuity "acknowledged the claim and retained the appropriate consultants to . . . inspect the Property." Def.'s Mot. 2; *see* Pl.'s Original Pet. 2. Snyder also hired Pinnacle to inspect the Property. Pl.'s Original Pet. 2.

On July 28, 2021, Acuity issued payment to Snyder in the amount of $427,557.18. *Id.*; Def's Mot. 2. After further investigation by Pinnacle, however, Snyder determined that the amount paid was insufficient to repair the Property to its former condition and notified Acuity. Pl.'s Original Pet. 3. Acuity hired an engineering firm, Nelson Forensics (Nelson), to inspect the Property and thereafter "maintained its claim decision." *Id.* Snyder then hired W. Tom Witherspoon, Ph.D., P.E., to inspect the Property alongside Pinnacle and opine on the scope of damages and amount of loss. *Id.* After reviewing Dr. Witherspoon's report and Pinnacle's updated estimate, Acuity nevertheless stood firm on its claim decision. *Id.*

On October 6, 2022, Snyder sent a pre-suit notice letter, requesting "additional payment in the amount of $674,637.47, . . . [including] actual supplemental damages in the amount of $630,579.84, . . . and attorneys' fees and interest." Def's Mot. 2. On December 5, 2022, Acuity denied Snyder's request. *Id.* (citing Acuity's December 5, 2022 letter, Exhibit C, ECF No. 5-3).[3] Snyder filed suit in the 132nd Judicial District Court, Scurry County, Texas, and Acuity removed the case to this Court. ECF No. 1, at 1.

### B. Parties' Arguments

On August 17, 2023, Acuity "invoked appraisal" under the insurance policy's terms. Def.'s Mot. 2. Acuity designated its appraiser and requested Snyder do the same within twenty days, "as required under the [p]olicy." *Id.* at 3. On September 14, 2023, although after the twenty-day period prescribed the policy, Snyder designated its appraiser. *Id.* at 5. Acuity moves to abate the instant litigation pending completion of the appraisal and asserts that "Snyder does not dispute that appraisal is appropriate pursuant to the [p]olicy or that the appraisal process was properly invoked." *Id.* In accordance with Federal Rule of Civil Procedure 26(f), the parties submitted a joint report, which indicates that the appraisal process continues. ECF No. 10, at 5.

Acuity avers that abating this matter pending appraisal "will promote judicial economy because the appraisal award will be binding and enforceable upon the [p]arties as to the amount of loss." Def.'s Mot. 6. It argues that because the effect of an appraisal provision is to estop one party from contesting the issue of damages under an insurance contract, only the question of liability is left for the Court. *Id.* Thus, the appraisal process "will likely resolve the parties' dispute, since timely payment of any award nullifies the insurer's contractual liability." *Id.* Moreover, because Snyder's extra-contractual claims also stem from Acuity's alleged policy

---

[3] Acuity alleges that this letter was sent on December 2, 2022 (Def.'s Mot. 2 n.3), but the document attached as Exhibit C, denying Snyder's request as described, is dated December 5, 2022. *See* ECF No. 5-3, at 25.

3

breach, "resolution of [Snyder's] breach-of-contract claim through appraisal" will also resolve its other claims. *Id.* at 6–7. Acuity contends that because of the foregoing, "good cause to abate the litigation exists" and abatement during appraisal "will reduce or eliminate the need for litigation," which is the "very intent of the appraisal provision." *Id.* at 7.

Snyder disagrees. It claims there is a "coverage dispute involving a disagreement regarding the scope of loss and . . . [its] extra-contractual claims are not subject to the appraisal process." Pl.'s Resp. 2. Thus, while appraisal may determine the amount of loss regarding portions of the Property "to which there is no coverage dispute, appraisal cannot determine coverage. Nor can appraisal resolve [Snyder's] extra-contractual claims . . . ." *Id.* In support of its contention that there is a coverage dispute, Snyder asserts that certain areas of the Property—"multiple elevations (sides) of the Property" and the stone veneer—were damaged during the storm, while Acuity allegedly denies that these areas suffered damage. *Id.* at 4–5. Moreover, Acuity "failed to pay for additional repairs due to the [l]oss" after Snyder informed Acuity that the original payment was insufficient to cover the scope of damages. *Id.* at 5 (citation omitted). Snyder concedes that while timely payment of an appraisal award may nullify Acuity's contractual liability, Snyder asserts that appraisal will not resolve its extra-contractual claims. *Id.* at 6. Because appraisal will not resolve this dispute in its entirety, Snyder contends that it would not be in the interest of judicial efficiency to abate this matter. *Id.* at 4.

In its Reply, Acuity maintains that abating the litigation pending appraisal is proper because Snyder "mischaracterize[s] the issues in dispute, the intent of appraisal, and the result of timely payment of an appraisal award." Def.'s Reply 2, ECF No. 8. Acuity asserts that the "scope of damage, scope of repair, and pricing disputes" are not "issues of coverage" and should be addressed by the appraisal process. *Id.* Acuity explains that while Snyder references "disputes

4

regarding the Property's elevations and stone veneer," the parties "agree the elevations were damaged by the hailstorm at issue, [but] disagree on the scope of the damage and how to repair" it. *Id.* As to Snyder's extra-contractual claims, Acuity alleges that under Texas law, "timely payment of an appraisal award precludes claims for breach of contract, [as well as] common law and statutory bad faith[,] unless the policyholder can prove an independent injury." *Id.* at 4. Acuity avers Snyder "has not alleged any independent injury" apart from its breach of policy claim and if an appraisal determines that Acuity does not owe Snyder anything further or if Acuity pays the appraisal award, Snyder will be precluded from asserting all claims alleged. *Id.*

## II. Discussion

### A. Legal Standards

"Appraisals are a 'means of resolving disputes about the amount of loss for a covered claim.'" *Salas Realty LLC v. Transp. Ins. Co.*, 425 F. Supp. 3d 751, 754 (N.D. Tex. 2019) (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 889 (Tex. 2009)). Insurance policies often contain appraisal clauses, which "are generally enforceable, absent illegality or waiver." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011).

In Texas, appraisals are limited to determining the amount of loss—liability is an issue reserved for the courts.[4] *Johnson*, 290 S.W.3d at 889–90. Although "[t]he line between liability and damage questions" is not always clear (*id.* at 890), the Texas Supreme Court has provided courts general guidance for making this determination.

---

[4] Neither party specifically addresses the issue of what state's law applies in evaluating appraisal clauses, but they apparently agree that Texas substantive law governs this action. *See* Def.'s Mot. 5; Pl.'s Resp. 3–4; Pl.'s Original Pet. 1; Def.'s Reply 3–4. Because the parties have not made choice of law an issue before the Court, or offered a reason to conclude otherwise, the Court will similarly apply Texas law. *See, e.g., Miller v. Ret. Sys. Grp., Inc.*, No. H-09-834, 2012 WL 13156988, at *11 n.105 (S.D. Tex. Mar. 2, 2012) ("Because neither party addresses choice of law, the court assumes that the parties agree Texas law applies to the contract cause of action."), *R. & R. adopted by* 2012 WL 13156809 (S.D. Tex. Apr. 3, 2012).

In *Johnson*, just as in the case at bar, the insured claimed a covered loss for hail damage to a roof. *Id.* at 887. The insurance company's "inspector concluded that hail had damaged only the ridgeline of her roof," while the insured's contractor "concluded the entire roof needed to be replaced." *Id.* In accordance with her policy, the insured demanded an appraisal, but the insurance company refused, claiming that the parties disagreed as to the cause of the damage—not the amount of loss—and an appraisal was therefore inappropriate. *Id.* at 888.

The Texas Supreme Court held that although determining the amount of hail damage necessarily required the appraiser to decide causation, appraisal was nevertheless warranted. *See id.* at 893, 895. In so holding, the court defined the scope of an appraisal, explaining that "when different causes are alleged for a single injury to property, causation is a liability question for the courts." *Id.* at 892. But "when different types of damage occur to different items of property," i.e., a divisible injury, "appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* Similarly, appraisers may distinguish between "loss due to a covered event" and that "from a property's pre-existing condition." *Id.* That is, "appraisers can decide the cost to repair each [damaged item] without deciding who must pay for it." *Id.* at 894.

In the case of divisible damage, for example, appraisers can assess causation when evaluating a property that has sustained covered damages but also has pre-existing wear and tear (i.e., damage not covered by most insurance policies). *Id.* at 892–93. The Texas Supreme Court reasoned that if appraisers could not "allocate damages between covered and excluded perils," appraisal clauses would be "largely inoperative." *Id.*

As particularly relevant to this case, the Texas Supreme Court also observed that the appraisal had not yet occurred. *Id.* at 894. The court explained that "unless the 'amount of loss' will never be needed (a difficult prediction when litigation has yet to begin), appraisals should

6

generally go forward without preemptive intervention by the courts." *Id.* at 895. This is because a court can always review an appraisal and remedy any flaws should the appraisal exceed the scope of the appraiser's authority. *Id.*

### B. The Court, in its discretion, will not abate this action.

Acuity asks the Court to abate this action pending appraisal because appraisal will resolve all issues in dispute, thereby promoting judicial efficiency and economy. Def.'s Mot. 5. Snyder disputes this notion, arguing appraisal will not resolve all issues between the parties, including its "extra-contractual claims." Pl.'s Resp. 2.

In cases where the insurance policy contains a "no action" clause, courts can abate the litigation. *See Johnson v. Liberty Mut. Fire Ins. Co.*, No. 4:14-CV-604, 2015 WL 11170153, at *2 (E.D. Tex. Oct. 30, 2015) ("In the case of an insurer trying to enforce a condition precedent . . . a proper remedy is abatement—or a stay of the proceedings—rather than barring the claim." (alteration in original) (citation omitted)). On the other hand, "[f]ederal district courts sitting in diversity and applying Texas law have, in most cases, declined to abate litigation pending appraisal where questions of coverage remain," as in the case at bar. *Carter v. Underwriters at Lloyd's, London*, No. 7:17-cv-00127-O, 2018 WL 10483854, at *2 (N.D. Tex. July 27, 2018) (citing cases in support). While the policy in this case contains a "no action" clause ("no one may bring a legal action against us under this [policy] unless . . . [t]here has been full compliance with all of the terms of this" policy (ECF No. 5-1, at 7)), this Court ultimately retains discretion over the question of whether to abate the proceeding, pending appraisal. *See, e.g., Carter*, 2018 WL 10483854, at *2–3 (denying insured's request to abate litigation pending completion of appraisal); *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex. 2002) ("While the trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal.").

Initially, the Court observes that the fact Snyder failed to demand appraisal prior to filing suit does not, standing alone, require abatement. *Abbey on Preston H.O.A. v. Admiral Ins. Co.*, No. 3:13-CV-0102-N, 2013 WL 12143827, at *1 (N.D. Tex. May 30, 2013). Snyder filed suit before Acuity invoked the appraisal clause—a condition that requires satisfaction "only if one side requests it" and "does not apply to every coverage situation." *Id.* That is, "the part of the policy that requires that 'all conditions be met' does not necessarily mean that the appraisal process need be completed for a policyholder to file suit." *Id.*

Moreover, Snyder raises several extra-contractual claims that are not governed by the appraisal clause. *See* Pl.'s Original Pet. 4–7. And the parties dispute coverage in addition to the amount of loss. *See id.* While Acuity maintains that the parties' dispute only involves the amount of loss, the parties' respective reports suggest a coverage dispute also exists. *See* ECF Nos. 5-2, 5-3. For instance, Nelson concluded that Acuity would cover "patching the hail impact marks and applying a new skim coat over the entire EIFS surface of the building's south elevation[,] . . . [r]emov[ing] and replac[ing] 49 PTAC louver and PTAC/window frame assemblies on the building's south elevation[, and] the horizontal sill mullion at the one indented storefront frame." ECF No. 5-2, at 4. Conversely, Dr. Witherspoon concluded "the entire south side should be replaced" and "cannot be 'patched,'" and that several other repairs were necessary but not covered by Acuity's assessment. ECF No. 5-2, at 4–5. One of these other repairs is the Property's stone veneer, "principally to the south/front elevation" but also including the other elevations as well. ECF No. 5-2, at 5. Snyder maintains that every side of the building's stone veneer was damaged by hail during the storm and should be "remov[ed] and replace[d]," but Acuity denied coverage except to the south elevation because Nelson concluded the damage "was not caused by hail impact." ECF No. 5-3, at 7.

"Thus, the parties dispute [Acuity's] liability no matter the result of the appraisal." *Abbey on Preston*, 2013 WL 12143827, at *1 (declining to abate case despite compelling appraisal). For these reasons, the Court **DENIES** Acuity's Motion to Abate. *See, e.g., Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2013 WL 12124308, at *5 (N.D. Tex. Mar. 26, 2013) (denying insurer's motion to abate where the amount of loss was only "one issue in dispute between the parties" and "appraisal [would] not resolve the other issues"). The Court will, however, set dates in the scheduling order that reflect the parties' need to complete the appraisal process.

### III. Conclusion

The Court **DENIES** Acuity's Motion to Abate proceedings and will enter an order setting forth scheduling deadlines in accordance with FED. R. CIV. P. 16 that accommodate the appraisal process. The Court directs the parties to continue the appraisal process and complete it as expeditiously as possible. **The parties shall file a joint notice thirty (30) days from the date of this Order advising the Court of the status of the appraisal.**

SO ORDERED.

Dated: December _5_, 2023.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

9